MICHAEL J. SACKSTEDER (CSB No. 191605)
msacksteder@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

VIGEN SALMASTLIAN (CSB No. 276846)
vsalmastlian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

JESSICA M. KAEMPF (*Pro Hac Vice* Forthcoming)
jkaempf@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

DARGAYE H. CHURNET (CSB No. 303659)
dchurnet@fenwick.com
FENWICK & WEST LLP
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.554.5400

*Attorneys for Plaintiff*
DATABRICKS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATABRICKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NOM NOM DATA INC. and NOM NOM AI INC.,<br>Defendants. | Case No. 3:26-cv-09634<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,298,995**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Databricks, Inc. ("Databricks") brings this action against Defendants Nom Nom Data Inc. and Nom Nom AI Inc. (collectively, "Nom Nom") and alleges as follows:

## NATURE OF THE ACTION

1. Databricks brings this action against Nom Nom seeking a declaratory judgment of non-infringement of United States Patent No. 12,298,995 ("the '995 patent") under 28 U.S.C. §§ 2201 and 2202.

2. This is a civil action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code. Databricks requests this relief because there is a real, immediate, and substantial controversy between Databricks and Nom Nom. Nom Nom has accused Databricks of infringing the '995 patent based on a series of escalating communications that were purposefully directed to Databricks personnel in California over a period of approximately nine months, including multiple sets of claim charts purporting to map claim limitations of the '995 patent to various Databricks products and services. Nom Nom has informed Databricks that it has retained patent litigation counsel and has threatened to pursue contingency-fee litigation absent a licensing agreement.

3. Databricks does not infringe any claim of the '995 patent.

## THE PARTIES

4. Plaintiff Databricks, Inc. is a Delaware corporation with its principal place of business at 160 Spear Street, 15th Floor, San Francisco, California 94105.

5. Databricks is headquartered in the San Francisco Bay Area and has been headquartered here since it was founded in 2013. Databricks currently maintains two offices in the San Francisco Bay Area, where it employs over 1,800 full-time employees, which is the largest concentration of Databricks employees anywhere in the United States.

6. On information and belief, Defendant Nom Nom Data Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 11507 Oak View Drive, Austin, Texas 78759.

FENWICK & WEST LLP
ATTORNEYS AT LAW

7. On information and belief, Defendant Nom Nom AI Inc. is a corporation organized and existing under the laws of British Columbia, Canada, with a principal place of business at 32290 Madsen Avenue, Mission, British Columbia V4S 1L1, Canada.

**JURISDICTION AND VENUE**

8. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

9. This Court can provide the declaratory relief sought under 28 U.S.C. § 2201 because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction. As described in detail below, Nom Nom has purposefully directed a pattern of escalating communications to Databricks personnel and its outside counsel in California over approximately nine months. In these communications, Nom Nom accused Databricks' products and services of infringing the '995 patent, provided multiple sets of claim charts purporting to substantiate those accusations, informed Databricks that it has retained patent litigation counsel, and expressly threatened contingency-fee litigation absent a licensing agreement.

10. Databricks has a right to make, use, offer to sell, and sell its products and services, including the Databricks Data Intelligence Platform, without a license from Nom Nom.

11. This Court has personal jurisdiction over Nom Nom because Nom Nom has engaged in actions directed toward this District that establish sufficient minimum contacts, and the exercise of personal jurisdiction comports with due process and traditional notions of fairness and substantial justice. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021).

12. This Court also has personal jurisdiction over Nom Nom AI Inc. pursuant to Federal Rule of Civil Procedure 4(k)(2). Nom Nom AI Inc. is a foreign corporation organized under the laws of British Columbia, Canada, and is not subject to the general jurisdiction of any state court. Nom Nom AI Inc. has sufficient contacts with the United States as a whole to satisfy due process, as it has purposefully directed its patent enforcement activities into the United States by sending multiple sets of infringement accusations, claim charts, and licensing demands to Databricks in this District. On information and belief, Nom Nom AI Inc. is the assignee of the '995 patent. On further

FENWICK & WEST LLP
ATTORNEYS AT LAW

information and belief, Nom Nom AI Inc. has acted in concert with Nom Nom Data Inc., which Nom Nom has stated is the entity to which U.S. Patent No. 12,298,995 was granted. On information and belief, Nom Nom AI Inc. and Nom Nom Data Inc. collaborated in purposefully directing all of the communications described herein to Databricks in California.

13. Nom Nom has purposefully directed at least eleven separate communications to Databricks personnel and outside counsel located in this District, over a period of approximately nine months. These communications were not limited to informing Databricks of patent rights. Rather, they included unsolicited acquisition demands, multiple sets of element-by-element claim charts, licensing proposals, estimates of billions of dollars in "affected revenue," threats of contingency-fee litigation, retention and introduction of prolific, plaintiff-side patent litigation counsel, and a proposal for in-person meetings at offices of Databricks' outside counsel in the Northern District of California.

14. Nom Nom's communications escalated over time, beginning with an unsolicited "M&A discussion" pitch to Databricks' CEO on October 21, 2025 and a subsequent follow-up on November 5, 2025. When those communications failed to have their desired result, Nom Nom escalated, sending a third email to Databricks' California-based General Counsel, this time with a claim chart containing allegations of infringement. Nom Nom continued to amplify its allegations from there, sending additional claim charts on February 17 and July 16, 2026. Nom Nom also identified its outside counsel two separate times, on January 15 and July 6, 2026. In its February 17 email, Nom Nom also attached a document it called a "Competitive Licensing Analysis," which purportedly demonstrated that 18 leading tech companies, including Databricks, implemented the claimed methods of the '995 patent. In the document, Nom Nom alleged a "competitive landscape licensing exposure" of up to $38.7 billion per year. At each stage, Nom Nom voluntarily initiated contact with Databricks in California. This pattern of escalating, affirmative patent enforcement activity directed at a California forum resident satisfies the purposeful availment requirement for a declaratory judgment suit. *See Trimble*, 997 F.3d at 1157 (finding the minimum contacts or purposeful availment requirement satisfied where defendant had "amplified its threats of infringement as the communications continued" and "identif[ied] the counsel it retained to sue").

Based on the totality of Nom Nom's conduct, including its multiple sets of infringement accusations, escalating claim charts, retention of experienced patent litigation counsel, and express threats to pursue contingency-fee litigation, Databricks has a reasonable apprehension that, absent the relief sought herein, Nom Nom will imminently file a patent infringement suit against Databricks.

15. The exercise of jurisdiction over Nom Nom does not offend traditional notions of fairness and substantial justice. Databricks is headquartered in this District. California has a strong interest in protecting its residents from unwarranted patent infringement accusations. Nom Nom voluntarily initiated and continued contact with Databricks—Databricks did not seek out Nom Nom. Nom Nom's communications went far beyond merely informing Databricks of patent rights, as they included multiple sets of claim charts, licensing demands, threats of litigation, and proposals to meet in this District. Nom Nom will suffer no unfair burden by litigating in this forum given that it voluntarily and repeatedly directed its enforcement activities here.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District. Specifically, Nom Nom directed numerous communications alleging patent infringement to Databricks personnel and its outside counsel located in this District, where Databricks itself is headquartered.

17. ***Divisional Assignment.*** Under N.D. Cal. Civil L.R. 3-2(d), because a substantial part of the events alleged occurred in San Francisco County, the case should be assigned to the San Francisco Division or the Oakland Division.

## BACKGROUND

18. Databricks has long been recognized as one of the most innovative players in the data analytics industry.[1] CNBC has repeatedly named Databricks to its "Disruptor 50" list, which ranks "the most promising venture-backed companies innovating across industries."[2] Databricks has also been a mainstay in Fast Company's ranking of the most innovative companies in the world, most recently placing as the eighth most innovative company for 2026.[3] Databricks' inventions

[1] https://www.databricks.com/company/awards-and-recognition
[2] https://www.cnbc.com/cnbc-disruptors/
[3] https://www.fastcompany.com/most-innovative-companies/list

are recognized by more than 150 patents, many of which have been cited by other tech giants like Amazon and Google. This history of innovation is precisely why more than 60 percent of Fortune 500 companies and more than 20,000 customers use Databricks.[4] On information and belief, Nom Nom claims to own all right, title, and interest in United States Patent No. 12,298,995, entitled "Systems, Methods, and Computer-Readable Media for Managing an Extract, Transform, and Load Process." The U.S. Patent and Trademark Office lists Nom Nom AI Inc. as the current assignee. A true and correct copy of the '995 patent is attached as Exhibit A.

19. U.S. Patent Application No. 18/583,653 was filed on February 21, 2024 and issued as the '995 patent on May 13, 2025.

20. On October 21, 2025, Niko Kontogiannis, Nom Nom's chairman and co-founder, sent an unsolicited email to Ali Ghodsi, Databricks' CEO, located in San Francisco, California. In that email, Mr. Kontogiannis pitched an "M&A discussion," claimed that Nom Nom's patented "self-healing data and AI technology" had been adopted industrywide, and cited a $400 billion-plus addressable market and $25-50 billion-plus in licensing potential.

21. The October 21, 2025 email also attached a "patent analysis," which specifically identified "U.S. Patent No. 12,298,995." The patent analysis stated that "U.S. Patent No. 12,298,995 was granted May 13, 2025, to Nom Nom Data Inc." and that the "patent covers automated systems using Natural Language Processing (NLP) and Generative AI for" a variety of purposes. The patent analysis further alleged that "[t]he patent covers groundbreaking technology that currently has $400+ billion in total market exposure across major technology companies," which "represents one of the largest patent infringement exposures in technology history." The patent analysis further explains that Databricks is "severely at risk," identifying certain Databricks features, including: "Delta Live Tables," "Agent Bricks," "Databricks Assistant," "CLAIRE AI," and "Delta Lake." The patent analysis states that the "[i]nfringement percentage" for Databricks is "65-85% of total revenue," thereby affecting "$2.5-3.3+ billion" of Databricks revenue.

22. On November 5, 2025, Mr. Kontogiannis sent a follow-up email to Mr. Ghodsi proposing a "discovery call" to explore collaboration and "continue" the M&A discussion.

---

4 https://www.databricks.com/customers

23. On December 9, 2025, Mr. Kontogiannis emailed Trâm Phi, Databricks' California-based General Counsel, copying Mr. Ghodsi and Ion Stoica and attaching a "Claim Mapping Analysis" for "Databricks Inc.'s Systematic Implementation of U.S. Patent No. 12,298,995." The analysis provided an element-by-element patent claim chart purporting to "establish[] literal infringement" by mapping claims 1-10 and 19 of the '995 patent to various Databricks products and services, including "Mosaic AI Model Serving with MLflow, Databricks Lakehouse Monitoring, Lakeflow Jobs (Workflows), SQL Warehouses with Intelligent Workload Management, Delta Lake with Predictive Optimization, Databricks Assistant, Databricks Notebooks with Execution Monitoring, and Delta Live Tables (Lakeflow Spark Declarative Pipelines)." In the December 9, 2025 email, Mr. Kontogiannis reiterated his desire to negotiate a license with Databricks.

24. On December 11, 2025, Fenwick & West LLP partner Michael Sacksteder, on behalf of Databricks, responded to Mr. Kontogiannis regarding the '995 patent matter.

25. On January 15, 2026, Mr. Kontogiannis replied to Mr. Sacksteder, copying Nom Nom's outside counsel Michael Blue of Blue Law. Mr. Kontogiannis referenced similar claim-mapping documents sent to other major technology companies, including some based in this District, and cited Microsoft's acquisition of Osmos as evidence that the patented technique was becoming an industry standard. The January 15, 2026 email further stated that Nom Nom has "been in discussions with several leading IP law firms" and that "[b]ased on the documented evidence from Databricks materials and merits of the matter, these IP firms have agreed to represent us on a contingency basis."

26. On February 17, 2026, Mr. Kontogiannis sent a corrected claim chart package to Mr. Sacksteder, explaining that a previously transmitted chart was the wrong document. The package included an updated claim chart mapping Databricks services to claims 1-5, 10, 12-14, and 19 of the '995 patent, a copy of the '995 patent, and an 18-company "competitive licensing analysis." The new claim chart identified the patent's alleged innovation and alleged infringement theories, including auto-modifying task instructions, generative SQL error correction, and

FENWICK & WEST LLP
ATTORNEYS AT LAW

conversion of natural language to ETL. On information and belief, of the 18 companies listed in the "competitive licensing analysis" document, 11 are also located in this District.

27. On July 6, 2026, Mr. Kontogiannis emailed Mr. Sacksteder, introducing Tim Devlin and Alex Chan of the Devlin Law Firm as Nom Nom's newly retained patent and negotiation counsel. On information and belief, the Devlin Law Firm is Nom Nom's patent litigation counsel. The Devlin Law Firm has been identified as counsel of record in 88 patent litigation cases pending in district court since January 1, 2025, and the Lex Machina litigation analytics service indicates that the firm's named partner Mr. Devlin has represented plaintiffs in 1,685 patent lawsuits since 2009.

28. In the July 6, 2026 email, Mr. Kontogiannis proposed a video call within two weeks and an in-person meeting at Fenwick & West's offices in the Northern District of California in mid-August. Mr. Kontogiannis stated that an updated claim chart would follow. On July 7, 2026, Mr. Sacksteder and Mr. Devlin exchanged further emails on July 7 and July 13 and scheduled a call for July 15, 2026.

29. On July 15, 2026, a call was held between counsel for Databricks at Fenwick & West in California and counsel for Nom Nom at the Devlin Law Firm. During the call, Nom Nom represented that it was seeking a cooperative license and would send an updated claim chart showing how Databricks purportedly infringes the '995 patent claims. Following the call on the same day, Alex Chan, counsel for Nom Nom, emailed an updated '995 claim chart purporting to map exemplary claims 1-6 of the '995 patent to the "Databricks' Data Intelligence Platform compris[ing] an integrated cloud-based computing system," identifying a conglomerate of features, including Lakeflow, Lakeflow Designer, AI/BI Genie, Genie Code, Genie ZeroOps, Genie ZeroOps for ML, Databricks SQL with Serverless Compute, Intelligent Workload Management (IWM), Mosaic AI, Mosaic AI Model Serving, Mosaic AI Agent Evaluation, Mosaic AI Tool Catalog, MLflow 3.0, Predictive Optimization, Unity Catalog, Spark Declarative Pipelines, Lakehouse//RT, AI/BI Dashboards, AI Functions, Genie Conversation APIs, Agent Bricks, Foundation Model APIs, Delta Live Tables, and Databricks Notebooks. The claim chart further

FENWICK & WEST LLP
ATTORNEYS AT LAW

states that "the infringement theories are based on this integrated Databricks system rather than any individual Databricks product viewed in isolation."

30. On August 19, 2026, Nom Nom held another call with two outside attorneys for Databricks. Three attorneys from Devlin Law Firm, Mr. Kontogiannis, and two Nom Nom executives participated. Nom Nom's counsel set up the call via Microsoft Teams and invited Databrick's counsel to attend. Mr. Sacksteder was located in the Northern District of California during the call. Another outside attorney for Databricks on the call—Dargaye Churnet–was located in the Los Angeles area. During the call, Nom Nom presented multiple options for resolving Nom Nom's infringement allegations, all of which involved payment of licensing fees by Databricks to Nom Nom, with the exact proposed terms and payment amounts to be specified in writing at a later time. Regarding the proposed licensing fees, counsel for Nom Nom stated that the "numbers will be large."

31. In total, Nom Nom has directed at least twelve separate communications regarding the '995 patent to Databricks personnel and/or outside counsel in San Francisco, California, within this District, over a period of approximately ten months. These communications have escalated in specificity and seriousness—from an unsolicited M&A pitch, to multiple claim charts, to retention of patent litigation counsel, to updated infringement contentions—all directed to Databricks personnel and outside counsel in the Northern District of California.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## COUNT I

## DECLARATION OF NON-INFRINGEMENT OF THE '995 PATENT

32. Databricks restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

33. On information and belief, Nom Nom claims to own all right, title, and interest in the '995 patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it.

34. Throughout Nom Nom's multiple sets of claim charts, Nom Nom has alleged that the accused Databricks Data Intelligence Platform together with accused Databricks services allegedly meets claims 1-14 and 19 of the '995 patent.

35. Specifically, Nom Nom's most recent claim chart states that "the accused system is the integrated [Databricks] Data Intelligence Platform comprising cooperating Databricks services, including Lakeflow, AI/BI Genie and Genie Code, Databricks SQL with Serverless compute, and Mosaic AI as interoperable services within its Data Intelligence Platform, governed by a shared Unity Catalog substrate, workload-management services, monitoring services, and/or related optimization functionality. The claim mappings below are directed to the operation of this integrated system. Accordingly, the evidence cited for any particular limitation may originate from one or more cooperating or integrated Databricks components that collectively perform each and every limitation set forth" in the claim chart. Nom Nom's claim chart further accuses the following services of infringement: Lakeflow, Lakeflow Designer, AI/BI Genie, Genie Code, Genie ZeroOps, Genie ZeroOps for ML, Databricks SQL with Serverless Compute, Intelligent Workload Management (IWM), Mosaic AI, Mosaic AI Model Serving, Mosaic AI Agent Evaluation, Mosaic AI Tool Catalog, MLflow 3.0, Predictive Optimization, Unity Catalog, Spark Declarative Pipelines, Lakehouse//RT, AI/BI Dashboards, AI Functions, Genie Conversation APIs, Agent Bricks, Foundation Model APIs, Delta Live Tables, and Databricks Notebooks.

36. The accused Databricks Data Intelligence Platform and accused Databricks services do not directly or indirectly infringe any claim of the '995 patent, either literally or under the doctrine of equivalents for at least the following reasons.

37. By way of example, and without limitation, claim 1 recites, in part, "process the ETL event data to identify a first ETL task of the set of ETL tasks limiting a performance of the ETL process, wherein the first ETL task corresponding to one or more SQL operations." The accused Databricks Data Intelligence Platform and accused Databricks services do not "process [] ETL event data to identify a first ETL task of the set of ETL tasks limiting a performance of the ETL process" as they have no way of determining whether any ETL task is limiting performance. Independent claims 10 and 19 and all corresponding dependent claims recite substantively identical limitations, which are not met for the same reason.

38. As another example, and without limitation, claim 1 recites, in part, "receive ETL event data associated with an execution of a set of ETL tasks of the ETL process" and "split the

FENWICK & WEST LLP
ATTORNEYS AT LAW

first ETL task into two or more subtasks; and automatically modify a set of task instructions associated with the first ETL task to dynamically schedule two or more subtasks as part of the ETL process to improve the performance of the ETL process." During "execution of a set of ETL tasks of the ETL process," the accused Databricks Data Intelligence Platform and accused Databricks services do not "split the first ETL task into two or more subtasks," as there is no way to split an existing task that is part of an executing ETL process. Additionally, the accused Databricks Data Intelligence Platform and accused Databricks services do not "automatically modify a set of task instructions associated with the first ETL task to dynamically schedule two or more subtasks as part of the ETL process to improve the performance of the ETL process," as there is no way to modify task instructions or schedule new subtasks as part of an executing ETL process. Independent claims 10 and 19 and all corresponding dependent claims recite substantively identical limitations, which are not met for the same reason.

39. For at least the foregoing reasons, without limitation, Databricks does not infringe any claim of the '995 patent, directly or indirectly, through its or its customers' activities in conjunction with any of the accused Databricks products or services, either literally or under the doctrine of equivalents.

40. A substantial, immediate, and real controversy exists between Databricks and Nom Nom regarding whether Databricks infringes one or more claims of the '995 patent.

41. Databricks seeks a judgment declaring that Databricks does not directly or indirectly infringe any claim of the '995 patent, either literally or under the doctrine of equivalents.

## PRAYER FOR RELIEF

WHEREFORE, Databricks prays for judgment as follows:

A. A declaration that Databricks does not and has not infringed, directly or indirectly, any claim of the '995 patent.

B. An award of Databricks' costs pursuant to Federal Rule of Civil Procedure 54.

C. A finding that this is an exceptional case and an award to Databricks of its reasonable attorney's fees pursuant to 35 U.S.C. § 285; and

D. All other available legal and equitable relief that the Court deems just and proper.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Databricks respectfully demands a trial by jury on all issues so triable.

Dated: September 4, 2026

FENWICK & WEST LLP

By: /s/ Michael J. Sacksteder

Michael J. Sacksteder (CSB No. 191605)
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Email: msacksteder@fenwick.com

Vigen Salmastlian (CSB No. 276846)
**FENWICK & WEST LLP**
801 California Street,
Mountain View, CA 94041
Telephone: 650.988.8500
Email: vsalmastlian@fenwick.com

Jessica Kaempf (*Pro Hac Vice* Forthcoming)
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Email: jkaempf@fenwick.com

Dargaye Churnet (CSB No. 303659)
**FENWICK & WEST LLP**
730 Arizona Avenue, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400
Email: dchurnet@fenwick.com

*Attorneys for Plaintiff*
DATABRICKS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW